UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SANKO STEAMSHIP CO., LTD.,

                                Plaintiff,

          - against -                                    07 Civ. 2401 (VM)

CHINA NATIONAL CHARTERING CORP.,
also know as SINOCHART,

                                Defendant.

------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT

Of counsel:

Kirk M. Lyons

**Lyons & Flood, LLP**
Attorneys for plaintiff
SANKO STEAMSHIP CO., LTD.
65 W. 36th Street, 7th Floor
New York, NY 10018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ II

PRELIMINARY STATEMENT ........................................................ 1

FACTS ............................................................................................. 4

ARGUMENT ................................................................................... 8

POINT I        SANKO HAS MET ITS RULE E(4)(f) BURDEN
               UNDER AQUA STOLI ...................................... 8

POINT II       ENGLISH LAW DOES NOT NECESSARILY
               CONTROL THIS ISSUE ................................... 9

POINT III      SANKO HAS ASSERTED ACCRUED CLAIMS
               AGAINST SINOCHART ................................. 10

POINT IV       SANKO IS ENTITLED TO SECURITY FOR ITS
               ALLEGED "INDEMNITY" CLAIMS ............. 13

POINT V        NEITHER CLAUSE 40 NOR THE ICA IS
               PARAMOUNT TO THE OBLIGATIONS
               PROVIDED FOR IN CLAUSE 78(c) .............. 16

POINT VI       THIS COURT HAS THE DISCRETION TO
               PERMIT AN ATTACHMENT IN SECURITY OF
               UNRIPE CLAIMS ........................................... 18

               a.      Nothing in Aqua Stoli overruled the discretion
                       accorded to this Court by Greenwich Marine. ............... 18

               b.      This Court should exercise its discretion and
                       allow the security provided to SANKO to
                       remain in place pending London arbitration
                       between the parties of the Charter Party
                       claims. ............................................................ 20

POINT VII      SANKO'S ACTIONS IN POSTING SECURITY
               WERE REASONABLE ..................................... 22

POINT VIII     SANKO HAS NOT TAKEN AN INCONSISTENT
               POSITION ...................................................... 23

POINT IX       THE AMOUNT OF SECURITY OBTAINED BY
               SANKO IS PROPER AND SHOULD NOT BE
               REDUCED ....................................................... 26

CONCLUSION .............................................................................. 26

### TABLE OF AUTHORITIES

**Cases**

Agoodash Achim of Ithaca v. Temple Beth-El, 147 Misc. 405, 263 N.Y.S. 81
(Sup. Ct. Tompkins Co. 1933) ................................................................................. 25

Aqua Stoli Shipping v. Gardner Smith, 460 F.3d 434 (2nd Cir. 2006) .................. 8, 18, 19, 20

Bates v. Long Island R.R., 997 F.2d 1028 (2nd Cir. 1993), cert. denied, 510
U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993) .............................................. 25

Bottiglieri Di Na Vigazione SPA v. Tradeline LLC, 472 F. Supp. 2d 588
(S.D.N.Y. 2007) .......................................................................................... 9, 15, 18, 19

Deiulemar Compagnia di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.,
2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. 2005) ................................................. 10

Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101
(S.D.N.Y. April 26, 2007) ..................................................................................... 10

Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A.C., 2006 U.S. Dist.
LEXIS 85616, 2007 A.M.C. 186 (S.D.N.Y. 2006) ............................................. 10

Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA., 2005 U.S. Dist.
LEXIS 19876 (S.D.N.Y. 2005) ............................................................................ 21

Gen. Tankers PTE., Ltd. v. Kundan Rice Mills, Ltd., 475 F.Supp.2d 396
(S.D.N.Y. 2007) .................................................................................................... 19

Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901 (2nd Cir. 1965) ............... 18, 19, 20

Hibiscus Shipping, Ltd. v. Novel Commodities S.A., 04 Civ. 2344, Docket
No. 21 (S.D.N.Y. July 8, 2004) ........................................................................... 21

In re Teltronics Serv., Inc., 762 F.2d 185 (2nd Cir. 1985) .................................... 25

Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476
F.Supp. 119 (S.D.N.Y. 1979) ............................................................................. 19

J.K. Int'l Pty. Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074
(S.D.N.Y. February 12, 2007) ........................................................................ 10, 15, 16, 20

Mediterranea Di Navigazione Spa v. Int'l Petrochemical Group S.A., 2007
U.S. Dist. LEXIS 35869 (S.D.N.Y. May 4, 2007) ............................................. 10

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S.
Dist. LEXIS 29789 (S.D.N.Y. April 24, 2007) .............................................. 14, 15

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552
(1979)..................................................................................................................24

Sonito Shipping Company Ltd.v. Sun United Maritime Ltd., 2007 U.S. Dist.
LEXIS 19531 (S.D.N.Y. March 16, 2007) .............................................9, 15, 19

Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F.Supp. 189
(S.D.N.Y. 1987)...................................................................................................22

T&O Shipping v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 2006
A.M.C. 361 (S.D.N.Y. 2006)................................................................................9

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870
(S.D.N.Y. August 15, 2006) ...............................................................................10

United States v. Ianniello, 808 F.2d 184 (2nd Cir. 1986), rev'd on other
grounds, United States v. Indelicato, 865 F.2d 1370 (2nd Cir. 1989)..................20

This Memorandum of Law is respectfully submitted by plaintiff SANKO STEAMSHIP CO., LTD. ("SANKO") in opposition to the motion to vacate or reduce the maritime attachment filed by defendant CHINA NATIONAL CHARTERING CORP., also known as SINOCHART (hereinafter "SINOCHART"). The facts in support of plaintiff's opposition are fully set forth in the accompanying Affirmation of Michael Volikas dated May 22, 2007, ("Volikas Affirmation") to which the Court is respectfully referred. In addition, the Court is respectfully referred to the Affirmation of Simon P.N. Rainey, SANKO's Rule 44.1 expert on English law ("Rainey Affirmation") also submitted in opposition to defendant's motion.

## **Preliminary Statement**

SINOCHART has no one but itself to blame for the Rule B attachment of its funds in the amount of $3,752,082.05. If SINOCHART had simply complied with Clause 78(c) in the Charter Party between the parties – "It is agreed that Charterers shall handle cargo claims in the first instance and provide security to cargo interests in respect of cargo claims within a reasonable time of receipt of a request to do so" – SANKO would not have been forced to seek security for its claim for breach of Clause 78(c) for SINOCHART's failure to do so.

By failing to take over the handling of the cargo claim asserted by Devon International Trading ("Devon") and the one asserted by Pactrans Air & Sea, Inc. ("Pactrans") and by failing to provide security to Devon and Pactrans for their cargo claims, there is no doubt SINOCHART has consciously breached its obligations under Clause 78(c) and must now suffer the consequences of that breach. There is no factual issue that SINOCHART has failed to handle the cargo claims and provide security for the cargo

claims. SINOCHART has admitted as much. As a result, the consequences of that failure include providing security to SANKO for (a) the handling costs incurred (past, present, and future) by SANKO in handling the Devon and Pactrans cargo claims and (b) the cargo claims that have been asserted by Devon and Pactrans and for which SANKO has already provided security.

Nor does Clause 40 of the Time Charter – the InterClub Agreement provision – provide any solace to SINOCHART. SANKO has not claimed that SINOCHART breached Clause 40; rather, plaintiff contends (essentially admitted by defendant) that SINOCHART has breached Clause 78(c) (see Verified Complaint ¶¶ 10 and 11). Thus, as will be discussed below in POINTS III – V, the ripeness and premature indemnity claim issues that form the backbone of SINOCHART's motion to vacate are irrelevant to SANKO's right to obtain security for a present breach of Clause 78(c) for the accrued claims it has against SINOCHART.

Moreover, contrary to SINOCHART's repeated insistence that plaintiff's claims are all indemnity in nature, SANKO's claims are not based on indemnity but they are all the direct result of SINOCHART's present failure to handle the cargo claims asserted by Devon and Pactrans and to provide security for those cargo claims. The security obtained by SANKO stems directly from the present breach of Clause 78(c) by SINOCHART – to wit; the costs incurred by SANKO in handling the cargo claims and the security provided to Devon and Pactrans for the release of the M/V SANKO RALLY (the "Vessel") from arrest in Florida and again in Alabama.

Finally, SINOCHART has taken the position that SANKO acted unreasonably in providing security to both Devon and Pactrans for essentially the same cargo claims. It is

blatantly disingenuous for SINOCHART to make that argument since the only reason why SANKO was forced to provide security to Devon and Pactrans in the first place was SINOCHART's failure to do so as it was obligated under Clause 78(c)! The SANKO RALLY was arrested in two separate venues, namely Florida and Alabama, and SANKO had no choice but to cause alternate security to be provided to Devon and Pactrans in order to allow the Vessel to depart the port. Otherwise, the Vessel would have had to remain in each port until such time as the arrest was vacated, which could have taken days, weeks, or even months. As the Court will appreciate, for each day the Vessel remains idle, revenues are lost while expenses remain to be paid.

Nor has SANKO sought double security as alleged by SINOCHART. The Verified Complaint filed by SANKO herein makes it perfectly clear that the amount of the security is based on a number of claims as enumerated in ¶ 15. Items (a) and (b) of ¶ 15 of the Verified Complaint relate to the cargo claims asserted by Devon and Pactrans. Realizing that the Devon and Pactrans claims overlap to some extent, SANKO has limited its security from SINOCHART to the amount of the claim asserted by Pactrans in the amount of $2,275,000, which includes a cargo claim amount of $1,500,000 and a demurrage element of $890,017.71. Items (c) through (e) of ¶ 15 correspond to the handling costs incurred by SANKO. Thus, there has been no "double dipping" by SANKO on the amount of the security obtained from SINOCHART as alleged by defendant.

In sum, SANKO respectfully requests the Court to deny in its entirety SINOCHART's motion to vacate or reduce the maritime attachment.

## Facts

On April 25, 2006, SANKO time chartered the Vessel to SINOCHART for sixty days for the carriage of plasterboard (the "Cargo") from Qingdao, the People's Republic of China to Pensacola, Florida and Mobile, Alabama (the "Charter Party"). At or around the same time, SINOCHART voyage chartered the Vessel to Pactrans. (See Volikas Affirmation at ¶ 2).

SINOCHART issued bill of lading no. CNHC02292001, dated May 12, 2006, for the transport of the Cargo, listing Pactrans as the party to be notified. During the course of loading at Qingdao, SINOCHART retained a Port Captain and stevedore to load and stow the Cargo. While en route from Quingdao to Pensacola, the Cargo collapsed due to the improper stowage of the Cargo by agents and representatives of SINOCHART. The collapse of the stow allegedly caused damage to the Cargo. (See Volikas Affirmation at ¶¶ 4-5).

During the course of the discharge of the Cargo at Pensacola on or about June 16, 2006, the surveyors for cargo interests, Devon, notified the Master and owners of the Vessel that security for the damaged Cargo was requested by cargo interests. (See Volikas Affirmation at ¶ 6).

As a result of the security demand by cargo interests, on June 21, 2006, Assuranceforeningen Gard ("Gard"), the Vessel's P&I Club requested that Skuld Assuranceforeningen ("Skuld"), SINOCHART's P&I Club, take over the handling of the cargo claims and post security, pursuant to Clause 78(c) of the Charter Party. Over the course of June 21 and 22, 2006, Gard and Skuld exchanged correspondence in regard to Gard's request. However, Skuld refused to take over the handling of the cargo claims and

to provide security to cargo interests. (See Volikas Affirmation at ¶ 7).

Beginning on June 23, 2006, Ince & Co., London solicitors for SANKO, made a number of demands to Skuld, acting for SINOCHART, to take over the handling of the cargo claim and to provide security pursuant to Clause 78(c) of the Charter Party. No substantive response was received from Skuld or the English solicitors acting on its behalf, Richards Butler, with the consequence that SINOCHART did not take over the handling of the cargo claim and did not provide security to cargo interests, Devon. (See Volikas Affirmation at ¶ 8).

On or about June 29, 2006, during discharge of the Cargo in Florida, the Vessel was arrested as security for the cargo claim brought by Devon. The lawsuit was filed in United States District Court, Northern District of Florida against SANKO and the Vessel. In order to release the Vessel from arrest, attorneys were retained by plaintiff, who arranged for security in the form of a Letter of Undertaking to be provided in the amount of $1,650,281.56. The Devon cargo claim is still on-going and plaintiff has incurred substantial attorneys' fees and costs in defending the cargo claim. (See Volikas Affirmation at ¶¶ 9-10).

Following the Vessel's arrest at Pensacola, on July 3, 2006, Ince & Co. made repeated efforts over the course of several months to attempt to convince SINOCHART to meet its obligations under the Charter Party; to wit – to take over handling of the cargo claim and provide counter-security in the amount granted to Devon or replacement security to cargo interests. Despite these multiple efforts, SINOCHART refused to take over the handling of the cargo claim or to provide security for the Devon cargo claim. (See Volikas Affirmation at ¶¶ 11-13).

- 5 -

On or about December 20, 2006, the Vessel was again arrested this time by Pactrans, freight forwarders acting for receivers of the Cargo, in Mobile, Alabama as security for alleged cargo loss (amounting to $1,500,000.00) and demurrage claims including interests and costs (amounting to $890,017.71). Pactrans' lawsuit against SANKO and the Vessel was filed in United States District Court, Southern District of Alabama. In order to release the Vessel from arrest in the Pactrans lawsuit, attorneys were again retained by plaintiff, who arranged for security in the form of a Letter of Undertaking to be provided – this time in the amount of $2,275,000.00. As with the Devon claim in Florida, the Pactrans claim in Alabama remains on-going and plaintiff has incurred, and continues to incur, substantial attorneys' fees and costs in defending the claim. (See Volikas Affirmation at ¶¶ 14-15).

Beginning on January 11, 2007, Ince & Co. again contacted SINOCHART through Richards Butler and advised that Pactrans had begun a lawsuit and arrested the Vessel for security. No meaningful response was ever received from Richards Butler as to whether SINOCHART would take over the handling of the Pactrans cargo claim and provide security for that cargo claim under Clause 78(c). (See Volikas Affirmation at ¶ 15).

In sum, SINOCHART has never taken over the handling of the cargo claims and provided security to the cargo interests, Devon and Pactrans.

On April 3, 2007, SANKO demanded London arbitration against SINOCHART pursuant to Clauses 17 and 30 of the Charter Party. Although Richards Butler said they did not receive the fax of April 3 demanding arbitration (a statement that is subverted by the fax confirmation that said demand was received on that date) they acknowledge they did receive Ince & Co.'s subsequent correspondence of May 2, referring to the demand for arbitration.

- 6 -

(See Volikas Affirmation at ¶ 16).

As of on or about March 23, 2007, when the Verified Complaint was filed in this action, SANKO had incurred the following costs in connection with the defense and handling of the lawsuits pending in Florida and Alabama and in connection with the matters handled by Ince & Co. in London:

(a)     $67,084.05 for legal fees and costs (including surveyors' fees) incurred to date in the defense of the Devon claim and Pactrans claim pending in Florida and Alabama, respectively;

(b)     $78,500.00 for legal fees and costs incurred to date in connection with handling the matter in London; and

(c)     $27,000.00 for fees and costs incurred to date in connection with the handling of the cargo claims by Gard on behalf of SANKO.

(See Volikas Affirmation at ¶ 17).

In addition, SANKO anticipates that further costs will be incurred in connection with the defense and handling of the lawsuits pending in Florida and Alabama and in connection with the matters handled by Ince & Co. in London as follows:

(a)     $300,000.00 for future legal fees and costs expected to be incurred in the defense of the Devon claim and Pactrans claim pending in Florida and Alabama, respectively;

(b)     $490,000.00 for future legal fees and costs expected to be incurred in connection with handling the matter in London; and

(c)     $25,000.00 for future fees and costs expected to be incurred in connection with the handling of the cargo claims by Gard on behalf

of SANKO.

(See Volikas Affirmation at ¶ 18).

Pursuant to the Ex Parte Order for Process of Maritime Attachment and Garnishment and Process issued thereunder, plaintiff sought and successfully restrained at various banks the sum of $3,752,084.05 as security for the claims set forth in the Verified Complaint herein. By agreement of the parties, the funds restrained at the various banks were released in exchange for alternate security in the form of a Letter of Undertaking in the same amount issued by Skuld, SINOCHART's P&I Club.

## ARGUMENT

### POINT I

### SANKO HAS MET ITS RULE E(4)(f)
### BURDEN UNDER AQUA STOLI

In Aqua Stoli Shipping v. Gardner Smith, 460 F.3d 434 (2nd Cir. 2006), the Second Circuit greatly reduced the grounds upon which a Rule B attachment can be vacated. Aqua Stoli eliminated the "needs-plus-balancing test" that the district court and other courts had employed to justify a vacatur of an otherwise valid Rule B attachment. Under Aqua Stoli, in a Rule E(4)(f) inquiry challenging a Rule B attachment, plaintiff has the limited burden to show that: (a) it has a valid *prima facie* admiralty claim; (b) the named defendant cannot be found within district; (c) the defendant's property attached was within the district; and (d) there is no statutory or maritime law bar to the attachment. Aqua Stoli, supra, 460 F.3d at 445. No further showing is required under Aqua Stoli in order to establish plaintiff's right to the attachment.

Of the above four factors under Aqua Stoli, SINOCHART has not challenged the fact that it cannot be found within the Southern District of New York, nor has it raised the

argument that there is a statutory or maritime law bar to the attachment or argued that the attached property was not within the District. Thus, three of the four elements under Aqua Stoli are not contested by SINOCHART.

Rather, defendant argues that plaintiff has failed to make out a valid *prima facie* admiralty case because SANKO's claims are contingent and premature and, therefore, do not support a claim for security under Rule B.

On this limited issue, SANKO will show it has met its burden under Aqua Stoli and SINOCHART's arguments should be rejected.

## POINT II

### ENGLISH LAW DOES NOT NECESSARILY CONTROL THIS ISSUE

Judges in the Southern District are not of a like mind in deciding the issue of what law governs the determination of whether a plaintiff has alleged a valid *prima facie* admiralty claim sufficient to support a Rule B attachment. SINOCHART relies on those decisions in which the court has found that issue to be substantive and, therefore, applied the law of the contract between the parties in order to decide the issue. See, Sonito Shipping Company Ltd.v. Sun United Maritime Ltd., 2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. March 16, 2007) (J. Haight); Bottiglieri Di Na Vigazione SPA v. Tradeline LLC, 472 F. Supp. 2d 588 (S.D.N.Y. 2007) (J. Kaplan); T&O Shipping v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006) (J. Scheindlin).

However, a number of other courts considering this issue have reached a different result and applied federal law to decide the issue, even in circumstances where the contract between the parties called for application of foreign law to the underlying dispute. See, e.g., Mediterranea Di Navigazione Spa v. Int'l Petrochemical Group S.A., 2007 U.S. Dist.

LEXIS 35869 (S.D.N.Y. May 4, 2007) (J. Koetl); Dolco Invs., Ltd. v. Moonriver Dev., Ltd.,

2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. April 26, 2007) (J. Sweet); J.K. Int'l Pty. Ltd. v.

Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. February 12, 2007) (J. Karas);

Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A.C., 2006 U.S. Dist. LEXIS 85616,

2007 A.M.C. 186 (S.D.N.Y. 2006) (J. Preska); Tide Line, Inc. v. Eastrade Commodities,

Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. August 15, 2006) (J. Wood); Deiulemar

Compagnia di Navigazione SpA v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS

40783 (S.D.N.Y. 2005) (Magistrate Judge Pitman).

Thus, it is far from clear that the matter is substantive rather than procedural as

urged by SINOCHART and we respectfully submit there is division among the judges of

this Court on this issue.  The relevancy of the governing law will be addressed below in

POINT VI and lies in the discretion this Court has in allowing SANKO to retain the security

for its claims.

### POINT III

### SANKO HAS ASSERTED ACCRUED
### CLAIMS AGAINST SINOCHART

Even if the Court were to apply English law to resolve the limited issue raised by

defendant, as will be discussed herein and in POINTS IV – VI, SINOCHART's arguments

should be rejected in their entirety.

SINOCHART has mischaracterized SANKO's claims as ones for cargo indemnity

brought under the InterClub Agreement ("ICA") as incorporated into the Charter Party by

Clause 40.  No matter how many times this wrong characterization is repeated throughout

SINOCHART's motion papers, however, they do not magically transform SANKO's

accrued claims for breach of Clause 78(c) of the Charter Party into indemnity claims.

- 10 -

As the Verified Complaint filed by SANKO along with the Affirmations of Michael Volikas and Simon Rainey submitted herein in opposition make clear, the claims asserted by plaintiff are for accrued losses based on a present breach of Clause 78(c). The security obtained by SANKO stems directly from the current breach of Clause 78(c) by SINOCHART – to wit; the costs incurred by SANKO in handling the cargo claims and the security provided to Devon and Pactrans for the release of the Vessel from arrest in Florida and again in Alabama.

As Simon Rainey, SANKO's expert on English law concludes, the present breach of Clause 78(c) by SINOCHART results in two accrued causes of action in favor of SANKO for two separate breaches of Clause 78(c) by SINOCHART. (See Rainey Affirmation at ¶ 43).

In reaching that conclusion, Mr. Rainey opines that Clause 40 and Clause 78(c) of the Charter Party are designed to deal with two wholly different situations.

The first situation is where a cargo claimant makes a claim against either the owners or the charterers for cargo damage and, in respect of that claim, seeks security. Clause 78(c) is designed to deal with this situation, by providing who among the owners and charterers will bear the costs of handling and managing cargo claims and the provision of security for such claims. Under Clause 78(c), SINOCHART bears the burden of handling the cargo claims and providing security to cargo interests. (See Rainey Affirmation at ¶ 21).

The second situation is where the cargo claimant has proceeded with its cargo claim to judgment or award against either the owners or the charterers or where the cargo claim has been the subject of a settlement or compromise by either owners or charterers. (See Rainey Affirmation at ¶ 22). Clause 40 and the ICA deal with this second situation and

dictate how liability for cargo claims will be apportioned between the owner and charterers. (See Rainey Affirmation at ¶ 23).

In regard to the first situation, Mr. Rainey explains that Clause 78(c) actually imposes two free-standing obligations upon SINOCHART. First, Clause 78(c) provides that "It is agreed that Charterers shall handle cargo claims in the first instance," which requires charterers to "handle" cargo claims as and when they are made, including when made against SANKO and imposes responsibility on SINOCHART for all aspects of handling any cargo claim, in particular, the defense of such claim and the instruction of lawyers to handle and defend the cargo claim. (See Rainey Affirmation at ¶¶ 28-29).

Second, Clause 78(c) provides that "It is agreed that Charterers shall ... provide security to cargo interest in respect of cargo claims within a reasonable time of receipt of a request to do so." This is a free-standing obligation which requires the charterers to put up security in respect of all cargo claims which may be made by cargo interests, including claims made against the owners. (See Rainey Affirmation at ¶ 29).

As Mr. Rainey expresses it: "If the charterers have refused or failed to handle the cargo claims and have similarly refused or failed to put up security in respect of those cargo claims when asked to do so by the owners, then the owners in English law have two accrued causes of action for two separate breaches of clause 78(c)." (See Rainey Affirmation at ¶¶ 43 and 55) (Emphasis added).

Thus clearly, under English law, SANKO currently has two accrued claims against SINOCHART for two breaches of Clause 78(c) by virtue of the failure of SINOCHART to handle the Devon and Pactrans cargo claims and to provide security to cargo interests for the cargo claims.

- 12 -

SANKO's accrued claims against SINOCHART have been quantified in the Affirmation of Michael Volikas of Ince & Co., the London solicitor representing SANKO, as well as the Verified Complaint filed herein.  The claim against SINOCHART for failure to handle the Devon and Pactrans cargo claims amounts to a total of approximately $987,584.05.  (See page 7 above as well as ¶¶ 17-18 of the Volikas Affirmation, which show handling costs of as March 23, 2007, of $172,584.05 and estimated future handling costs of an additional $815,000.00 for a total of $987,584.05).

The claim against SINOCHART for failure to provide security to Devon and Pactrans on their cargo claims is a total of $2,765,000, broken down as $2,275,000 for the security provided to Pactrans and $490,000 for the interest on that amount.  (See ¶ 15 of the Verified Complaint and ¶¶ 15 and 19 of the Volikas Affirmation).  SANKO chose the greater of the two amounts of security provided to cargo interests inasmuch as the security provided to Devon was only $1,650,281.56 and SANKO faces claims for cargo loss from Pactrans that exceed the amount of the Devon claim.  (See Volikas Affirmation at ¶ 19).

Thus, SANKO's claims against SINOCHART have accrued under Clause 78(c).

## POINT IV

### SANKO IS ENTITLED TO SECURITY FOR
### ITS ALLEGED "INDEMNITY" CLAIMS

Assuming *arguendo* without admitting that a portion of plaintiff's claims against SINOCHART are in the nature of indemnity claims, SANKO would still be entitled to security from defendant.

Initially, SANKO stresses that the losses incurred as a result of SINOCHART's breach of the handling of cargo claim obligation in Clause 78(c) would be an accrued claim by any definition.  These losses have been and continue to be incurred by SANKO as the

- 13 -

cargo lawsuits in Florida and Alabama are on-going and very active and the claims handling by plaintiff's London solicitors and P&I Club have been well underway since the inception of the cargo claim. As a result, SANKO would be entitled to security from SINOCHART for these current and increasing losses, which are recoverable in London arbitration, for defendant's failure to handle the cargo claims regardless of how the claim for security on the cargo claims is considered.

More to the point is SINOCHART's argument that under Clause 40 of the Charter Party (the ICA provision) plaintiff's claim for security in this action based on the security plaintiff has provided to Devon and Pactrans has not accrued and is premature since no judgments have yet been entered against SANKO or the Vessel in the Florida and Alabama litigation and no payment by way of judgment or settlement has been made by plaintiff on the underlying cargo claims. Of the total amount of security obtained by SANKO, this aspect would represent $2,765,000, broken down as $2,275,000 for the security provided to Pactrans and $490,000 for the interest on that amount.

The most recent decision on this issue is Judge Hellerstein's opinion in the case of Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789 (S.D.N.Y. April 24, 2007), which is strikingly similar to the case before the Court. In addressing another recent case on this issue, Judge Hellerstein summarized it thusly:

> In Sonito Shipping, Judge Haight considered if, under English law, clause 4(c) [of the ICA] should be interpreted to require that cargo claims be "properly settled and paid" before "a cause of action for indemnity [will be allowed to] accrue," or if "the ICA should be read as indemnifying against liability rather than against the discharge of liability." Judge Haight observed that, in the absence of precedents in England, two South African decisions, holding that "the obligation to indemnify only arises once

the underlying claims have been met," probably would be followed by an English court and, in turn, they should be followed by an American court. Thus, Judge Haight ruled that Sonito had not shown that it had a valid maritime claim against the defendant at the time of attachment.

Navalmar (U.K.) Ltd., supra, 2007 U.S. Dist. LEXIS 29789, at *16-18 (internal citations

omitted).

Judge Hellerstein then proceeded to distinguish prior cases:

In Sonito and Bottiglieri, however, there had been no ship arrests or equivalent provisional remedy to secure payment by a vessel owner of a claim of damaged cargo.

        \*        \*        \*

The parties have cited no precedent to suggest that Clause 4 of the ICA should apply where a vessel owner has had to prepay an obligation potentially owed by the charterer for goods damaged in an ocean voyage arranged by the charterer.

Navalmar (U.K.) Ltd., supra, 2007 U.S. Dist. LEXIS 29789, at *16-18.

SANKO submits the facts of this case, like those in the Navalmar case, distinguish

them from Judge Haight's opinion in Sonito and Judge Kaplan's opinion in Bottiglieri,

upon which defendant relies heavily.  Importantly, in neither the Sonito nor the Bottiglieri

cases was the plaintiff required to provide security for the underlying cargo claim as

SANKO was required to do here.  Further, neither the Sonito nor the Bottiglieri charter

parties contained a clause similar to Clause 78(c) in the Charter Party between plaintiff and

defendant in this case that places an obligation on the defendant (here SINOCHART) to

handle the cargo claims and to provide security to cargo interests.  These differences,

SANKO submits, should be determinative of the issue before the Court.

Nor does Judge Karas's decision in J.K. Int'l, cited by defendant, provide any

weight to defendant's argument as it is readily distinguishable from the present case.  In

J.K. Int'l, Judge Karas found the plaintiff's indemnity claim to be premature since there was no evidence that the shipowner intended to press a demurrage claim against the plaintiff. J.K. Int'l, supra, 2007 U.S. Dist. LEXIS 10074, at *12. There, the only evidence of the existence of the claim for which indemnity was sought, was an unsubstantiated statement that the owners were preparing a claim made by plaintiff's counsel during oral argument. Id. at *13.

Here, however, Devon and Pactrans have already commenced litigation of their cargo claims, have named SANKO and the Vessel as the sole defendants in their lawsuits (SINOCHART was not named a defendant in either action), and the Vessel was arrested twice, forcing SANKO to post security for the cargo claims. Given these factual differences, SANKO submits the J.K. Int'l is not controlling precedent.

Thus, SANKO is entitled to security even if the Court were to find that a portion of plaintiff's claims against SINOCHART were in the nature of indemnity claims.

### POINT V

### NEITHER CLAUSE 40 NOR THE ICA IS PARAMOUNT TO THE OBLIGATIONS PROVIDED FOR IN CLAUSE 78(c)

Neither Clause 40, nor the ICA which it incorporates, touch upon either (a) who is to handle a cargo claim when it is first made or (b) who is to provide security for such a cargo claim pending its determination or its settlement or compromise. As a result, Clause 40 and the ICA are not paramount to the obligations placed on SINOCHART in Clause 78(c).

As explained by Mr. Rainey, Clause 40 deals only with "liability for cargo claims" and the ICA deals only with the apportionment of claims which have been settled and paid. Neither deal with nor make any provision for the handling and defense of the cargo claims

after they have been brought or the putting up of security for such claims. Nothing in Clause 40 or the ICA is said as to who is to defend or who is to bear such costs. The ICA is silent on such matters which are outside its purview and purpose. (See Rainey Affirmation at ¶ 36).

Thus, the matters Clause 78(c) deals with are wholly outside the matters dealt with under Clause 40 and the ICA. Even Mr. Howse on behalf of SINOCHART conceded this point when he admitted that Clause 78(c) does not "seek to determine or apportion liability for cargo claims." (See Howse Declaration at ¶ 11).

Nevertheless, SINOCHART argues in its memorandum of law in support of its motion to vacate the attachment that "the decisions and dicta of the English cases demonstrate that English Courts have determined that the terms of the Inter-Club Agreement are exclusive and paramount to any other remedy with respect to third party cargo claims. Thus, even if Sanko argues that this suit is brought on the basis of an alternative cause of action, an English Court would find that the Inter-Club Agreement is the sole remedy with respect to its indemnity claims based on third party cargo claims." (pg. 14 of Memorandum of Law in Support). SINOCHART cites to no authority for this conclusion, and likewise Mr. Howse fails to offer any support for this position.

Mr. Rainey takes an even dimmer view of this submission:

> If, by this statement, it is being submitted that the incorporation or giving effect to of the Interclub Agreement by Clause 40 has the result that all aspects of cargo claims are exclusively dealt with under the Interclub Agreement so that a provision like clause 78(c) which makes provision for who is to handle claims and put up security for claims is in some way struck down in English law because of some paramountcy of the Interclub Agreement, then I do not agree with it. That submission as

- 17 -

<u>matter of English law is wrong and confuses a number of
separate questions</u>.

(Rainey Affirmation at ¶ 47) (Emphasis added).

The source of this apparently incorrect statement by SINOCHART is a clause in the

ICA providing that "[t]he terms of this Agreement shall apply notwithstanding anything to

the contrary in any other provision of the charterparty."

However, since as demonstrated above, Clause 78(c) deals only with who is to

defend and who is to put up security when a cargo claim is made – two aspects of cargo

claims which arise <u>before</u> and <u>independently of</u> the event which the ICA is concerned with

(namely settlement and payment of the cargo claim) – there is no inconsistency between

Clause 78(c) and the ICA.  Thus, by its own terms, the ICA will not operate to strike down

Clause 78(c).  (See Rainey Affirmation at ¶¶ 39-50).

Thus, Clause 40 and the ICA are not paramount to the obligations of SINOCHART

under Clause 78(c).

<div align="center">

### POINT VI

### THIS COURT HAS THE DISCRETION
### TO PERMIT AN ATTACHMENT IN
### SECURITY OF UNRIPE CLAIMS

</div>

In any event, even if this Court determines that SANKO's claims are not accrued

and are unripe as argued by SINOCHART, this Court nonetheless should still allow the

attachment to stand, by virtue of the discretion accorded to it under <u>Greenwich Marine, Inc.</u>

<u>v. S.S. Alexandra</u>, 339 F.2d 901 (2nd Cir. 1965).

**a.    Nothing in <u>Aqua Stoli</u> overruled the discretion
accorded to this Court by <u>Greenwich Marine</u>.**

SINOCHART argues that the discretion accorded to this Court by <u>Greenwich</u>

<div align="center">

- 18 -

</div>

Marine has somehow been circumscribed and limited to "compelling circumstances" by the Second Circuit's decision in Aqua Stoli, relying on Bottiglieri, supra, 472 F. Supp. 2d at 591 and Sonito, supra, 2007 U.S. Dist. LEXIS 19531, at *31.

However, a review of Aqua Stoli shows there was no de-limiting affect of the discretion accorded the Court under Greenwich Marine. In Aqua Stoli, the Second Circuit, in rejecting the defendant's interpretation of the holding in Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F.Supp. 119 (S.D.N.Y. 1979), as being that district courts have inherent equitable authority to vacate attachment orders on grounds of "unfairness" to the attached party, stated that:

> Although Integrated does contain language that taken in isolation could be read to support a broad equitable inquiry, see id. at 124 ("[C]ourts may easily . . . set aside an unfair attachment."), close examination reveals that the discretion contemplated in that case turned on a limited set of factors that are absent in this case.

Aqua Stoli, supra, 460 F.3d at 442.

However, the issue involved in Integrated was whether the defendant was present within the district via possible service through the Secretary of State, and thus, whether the unfairness of the attachment would justify vacatur. Aqua Stoli, supra, 460 F.3d at 442. Nothing in Integrated relates to the issue present before this Court, nor does it relate generally to the discretion accorded to this Court by the Second Circuit in Greenwich Marine.

Moreover, as this Court has recently stated:

> The Second Circuit has established a clear procedure in overruling prior panel decisions. It "is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [the

Second Circuit] en banc."

Gen. Tankers PTE., Ltd. v. Kundan Rice Mills, Ltd., 475 F.Supp.2d 396, 399 (S.D.N.Y.

2007) (citing United States v. Ianniello, 808 F.2d 184, 190 (2nd Cir. 1986), rev'd on other

grounds, United States v. Indelicato, 865 F.2d 1370 (2nd Cir. 1989)). Therefore, it follows

logically that Greenwich Marine remains good law and nothing in Aqua Stoli has implicitly

or expressly overruled the principle that this Court has discretion to permit attachment in

security of premature indemnity claims.

Thus, the discretion accorded the Court under Greenwich Marine remains alive and

well after Aqua Stoli. For example, Judge Karas correctly stated in J.K. Int'l that "the

principle this Court draws from Greenwich is that a premature claim likely can be

dismissed, unless some set of peculiar facts about the case and the equities of the case favor

the plaintiff." J.K. Int'l, supra, 2007 U.S. Dist. LEXIS 10074, at *14. The peculiar facts of

this case and equities in favor or SANKO weigh towards maintaining the security provided

by SINOCHART.

**b.    This Court should exercise its discretion and allow
the security provided to SANKO to remain in place
pending London arbitration between the parties of
the Charter Party claims.**

In Greenwich Marine, the Second Circuit determined that the district court has

discretion to vacate security that was based on a contingent indemnity claim. It based the

decision to vacate the attachment on the remoteness of the underlying claim, noting that it

was "exceedingly probable" that the plaintiff would never need to sue for indemnification,

and finding that no judgment had been entered against the plaintiff, and in fact, no suit

against the plaintiff had even been commenced. Greenwich Marine, Inc., 339 F.2d 901,

905.

- 20 -

However, in the present case, the cargo litigation in Florida and Alabama is anything but remote. In the event judgment is entered against SANKO or the Vessel in the Florida and/or Alabama lawsuits, the cargo claimants will be able to satisfy the judgment out of the Letters of Undertaking issued on behalf of SANKO.

Moreover, as discussed earlier, SINOCHART has already breached Clause 78(c) by failing to handle the Devon and Pactrans cargo claims and failing to provide security to cargo interests. This present breach by SINOCHART has caused and will cause SANKO to incur substantial attorneys' fees and costs, solicitors' fees and costs, and P&I Club fees and costs in handling the cargo claims and has forced SANKO to provide security to the cargo interests, Devon and Pactrans. Clearly, the equities here strongly favor SANKO and the Court should exercise its discretion and allow SANKO to retain the security provided on behalf of SINOCHART.

Even under less compelling circumstances, a number of Judges in the District have allowed security to remain in place for an unripe indemnity claim. Eitzen Sealift A/S v. Cementos Andinos Dominicanos, 2005 U.S. Dist. LEXIS 19876, *9-10 (S.D.N.Y. 2005) (J. Chin) (allowing security for unripe indemnity claim to remain where the third-party had initiated proceedings against the vessel owner); Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409, *7-9 (S.D.N.Y. 2005) (J. Buchwald) (allowing security for unripe indemnity claim to remain since (1) there was evidence of correspondence between the owners, head charterers, and plaintiff asserting damage claims, (2) arbitrators had already been appointed to resolve those claims, and (3) plaintiff's counsel stated that the head charterers had initiated suit against plaintiff in Korea and attached its property there); Hibiscus Shipping, Ltd. v. Novel Commodities S.A., 04 Civ. 2344, Docket

No. 21 (S.D.N.Y. July 8, 2004) (J. Berman) (denying a motion for vacatur of attachment stating that a claim letter was sufficient to demonstrate ripeness); <u>Staronset Shipping Ltd. v. North Star Navigation Inc.</u>, 659 F.Supp. 189, 191 (S.D.N.Y. 1987) (J. Knapp) (allowing security for an unripe indemnity claim where a stevedore arrested a vessel in order to obtain security; the owner's claim against charterer was not premature since "the shipowner's concerns are reasonable" and thus, the owner was "entitled to the security which he seeks.")

Given all of the circumstances previously addressed herein, SANKO respectfully requests the Court to exercise its discretion and allow the security provided to plaintiff to remain in place pending London arbitration between plaintiff and defendant.

<div align="center">

**POINT VII**

**SANKO'S ACTIONS IN POSTING<br>SECURITY WERE REASONABLE**

</div>

SINOCHART makes much of the fact that the litigation involving SANKO, SINOCHART, Pactrans and Devon, is circuitous in nature. However, SINOCHART could have avoided any such problem by simply honoring its two separate obligations under Clause 78(c). After all, it was SINOCHART's refusal to handle the cargo claims and post security for them in the first instance which created this Gordian knot of claims and counter-security.

Moreover, SINOCHART's criticism of the manner in which SANKO has handled the cargo claims is groundless. To the extent that SINOCHART contends that it was unnecessary or unreasonable for SANKO to have posted security twice for the same cargo claim, SANKO submits that its posting of security was the most reasonable course of action considering that in both cases, SANKO's vessel was under arrest. At the time of the Vessel's arrest in both Florida and Alabama, the options to SANKO were not very attractive

<div align="center">- 22 -</div>

and commercially unviable.  SANKO could have moved to vacate the arrest of the Vessel, which would have taken days, weeks, or months to decide, it could have left the Vessel in Florida or in Alabama until the litigation was resolved, which would have taken days, weeks, or months, or plaintiff could have provided alternate security for the Vessel, which meant the Vessel could leave port after the Cargo was discharged.  The first two options would have been a commercial disaster and resulted in thousands of dollars in lost revenue to SANKO, which would have increased the claim against SINOCHART accordingly.  The third option was therefore the only reasonable option available to SANKO.  Plaintiff should not be penalized for taking the only reasonable option available to it at the time.

Again, if SINOCHART had wished to see the cargo claims handled in a different manner, SINOCHART should have honored its obligations under Clause 78(c), which expressly required them to handle the cargo claims in the first instance and provide security to the cargo interests, Devon and Pactrans.

## POINT VIII

### SANKO HAS NOT TAKEN AN INCONSISTENT POSITION

SINOCHART has taken the position that SANKO should be estopped from arguing that its claims are not unripe contingent indemnity claims because SANKO has taken the opposite position in litigating the claim brought by Pactrans in Alabama.  However, SINOCHART's reasoning is flawed, since there is nothing inconsistent about SANKO's position in the present case and the arguments it made in its motion to quash the warrant of arrest in the Alabama action.

SANKO had argued in the Alabama action that Pactrans' arrest of the Vessel was improper since Pactrans' alleged claims could not support a maritime lien under English

- 23 -

law. There, the source of Pactrans' claims was common law indemnity. Here, however, SANKO's claim is for breach of contract under Clause 78(c) rather than a cargo indemnity claim under Clause 40 and the InterClub Agreement, which breach gives rise to two present causes of action. (See Rainey Affirmation at ¶ 43).

In any event, SINOCHART's claim of estoppel melts away by virtue of the same position it has taken in a very recent lawsuit in this District. SINOCHART has commenced a Rule B attachment proceeding in which it seeks security of a claim for indemnity against liability it may be found to have to the registered owner of a vessel, where SINOCHART sub-chartered the vessel to a defendant which breached the charter party's redelivery clause. (See Verified Complaint filed by China National Chartering Corp. against Source Link Shipping Co. Ltd., 07 Civ. 2736 (DAB), annexed hereto.) Surely SINOCHART would argue that its position in Source Link Shipping case is not inconsistent with its present position, and thus, should not preclude it from making the present argument.

Furthermore, under principles of collateral estoppel or judicial estoppel (which appear to be the principles upon which defendant relies), it is not improper for SANKO to argue one position in Alabama and another position in this Court, and such arguments, even if they are potentially inconsistent, cannot have preclusive effect against SANKO. As the United States Supreme Court pronounced in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), offensive collateral estoppel should not apply "in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive collateral estoppel would be unfair to a defendant." Thus, SINOCHART's attempted offensive use of estoppel is improper since SINOCHART could have joined in the Pactrans litigation and should have joined by virtue of its obligation to

- 24 -

handle the cargo claim under Clause 78(c).

Moreover, it would be patently unfair to SANKO if the security (or at least a portion of the security for the cargo claim) were vacated by the Court. By virtue of SINOCHART's breach of Clause 78(c), SANKO has had to handle the cargo claims in Florida and in Alabama and has had to provide security to cargo interests, Devon and Pactrans. To allow the offensive use of collateral estoppel by SINOCHART in these circumstances would be tantamount to rewarding defendant for its failure to live up to its obligations under Clause 78(c) at the sole expense of SANKO, the non-breaching party. The prejudice and unfairness to SANKO is therefore manifest.

To the extent that SINOCHART asserts that the principle of equitable estoppel should bar SANKO from making arguments to the contrary in this proceeding, SANKO notes that Agoodash Achim of Ithaca v. Temple Beth-El, 147 Misc. 405, 263 N.Y.S. 81 (Sup. Ct. Tompkins Co. 1933), upon which SINOCHART relies, is a state trial court decision describing a feature of New York state law rather than federal common law, and is thus, inapplicable here.

Moreover, as the Second Circuit explained in Bates v. Long Island R.R., 997 F.2d 1028 (2nd Cir. 1993), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993), in defining for the first time the elements of judicial estoppel:

> [T]he party against whom the estoppel is asserted must
> have argued an inconsistent position in a prior proceeding;
> and second, the prior inconsistent position must have been
> adopted by the court in some manner.

Bates, supra, 997 F.2d at 1038. Here, of course, even assuming arguendo that SANKO has argued an inconsistent position in a prior proceeding (and further assuming that a

proceeding in a different jurisdiction, involving disparate issues and parties, qualifies as a "prior proceeding"), the inconsistent position has clearly not been adopted by the Alabama court. Thus, judicial estoppel is inapplicable here.

For these reasons, defendant's estoppel argument fails.

## POINT IX

### THE AMOUNT OF SECURITY OBTAINED BY SANKO IS PROPER AND SHOULD NOT BE REDUCED

SINOCHART claims that the amount attached by SANKO represents double the amount of any possible judgment that could be rendered against SANKO in the actions commenced against it by Pactrans and Devon, and that therefore, the amount of security should be reduced.

However, SINOCHART's characterization of the amount sought by SANKO in its attachment is incorrect. Although SANKO was forced to provide double security for the same cargo claim by virtue of having its Vessel attached by Devon and then Pactrans, SANKO has not sought recovery for the full value of both of the Letters of Undertaking it was forced to provide. Rather, SANKO has limited its security to the amount of the claim asserted by Pactrans in the amount of $2,275,000, which includes a cargo claim amount of $1,500,000 and a demurrage element of $890,017.71, and which represents the greater of the amounts provided in security of the cargo claims. (See Volikas Affirmation at ¶ 19).

Thus, there is no justification for a reduction of the amount attached by SANKO.

## CONCLUSION

Plaintiff SANKO respectfully requests that this Court issue an order, denying defendant's motion to vacate or reduce the maritime attachment and awarding plaintiff any

- 26 -

further and different relief as the Court sees fit.

Dated: May 23, 2007

<div style="margin-left:40%">

LYONS & FLOOD, LLP
Attorneys for Plaintiff
SANKO STEAMSHIP CO., LTD.

</div>

By: _____

Kirk M. Lyons (KL-1568)
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

U:\kmhldocs\2579004\Motions\MOL-OppVacate.doc

## CERTIFICATE OF SERVICE

Kirk M. Lyons, an attorney duly admitted to practice before this Honorable

Court, affirms on this 23rd day of May 2007, I served true copies of the foregoing, by DHL

Express to:

> LENNON, MURPHY & LENNON, LLC
> Attorneys for Defendant
> CHINA NATIONAL CHARTERING CORP.
> Tide Mill Landing
> 2425 Post Road
> Southport, CT 06890

_____
Kirk M. Lyons

U:\kmhldocs\2579004\Motions\MOL-OppVacate.doc

BLANK ROME, LLP
Attorneys for Plaintiff
CHINA NATIONAL CHARTERING CORP.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE BATTS**

**07 CV 2736**

---

CHINA NATIONAL CHARTERING CORP.,

               Plaintiff,

           -against-

SOURCE LINK SHIPPING CO. LTD.

               Defendant.

---

07 Civ.

**VERIFIED COMPLAINT**

     Plaintiff, CHINA NATIONAL CHARTERING CORP. ("Plaintiff"), by its attorneys Blank Rome, LLP, complaining of the above-named Defendant, SOURCE LINK SHIPPING CO. LTD. ("Defendant"), alleges upon information and belief as follows:

     1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

     2.    At all material times, Plaintiff was and now is a foreign company with its offices in Beijing, P. R. China.

     3.    At all material times, Defendant was and is a foreign corporation or other business entity organized under the laws of the British Virgin Islands, with no place of business in the United States.

4.    By a charter party dated on or about January 5, 2007, ("the Charter"), Plaintiff time-chartered the M/V LIGARI ("the Vessel") to Defendant for one time-charter trip, with redelivery to Plaintiff before February 13, 2007.

5.    The Vessel performed as required by the terms of the Charter, but Defendant breached the Charter by failing to redeliver the Vessel until February 21, 2007.

6.    Plaintiff had chartered the Vessel from her registered owner on terms which required Plaintiff to redeliver the ship to the registered owner not later than February 15, 2007. As a result of Defendant's failure to redeliver the ship until February 21, 2007, the registered owner has asserted a claim against Plaintiff for recovery of the difference between the head charter hire rate and the substantially higher charter market rate from the commencement of the Vessel's last voyage, in the total amount of US$704,785.94.

7.    As Plaintiff has been damaged by Defendant's breach of the Charter to the extent of Plaintiff's liability to the registered owner, Defendant is liable to Plaintiff for the sum of US$704,785.94.

8.    The Charter provided for arbitration of disputes in London.  Plaintiff reserves it right to arbitrate the disputes, pursuant to 9 U.S.C. § 8, and has commenced arbitration.

9.    Maritime Arbitrators in London award interest, legal fees and arbitral costs to a successful party.  Plaintiff estimates: recoverable interest will amount to at least $148,000 at a rate of 7% per year for at least 3 years; recoverable arbitral costs will be incurred in pursuing its indemnity claim against Defendant in the sum of at least US$100,000; and recoverable legal expenses will be incurred of at least US$100,000, amounting in all to recoverable interest and expenses of at least US$1,052,786.

10.    The total amount of Plaintiff's claims for which Plaintiff requests issuance of Process of Maritime Attachment and Garnishment is **US$1,052,786**.

11.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee in the district which are due and owing or otherwise the property of to the Defendant up to the amount of **US$1,052,786** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court enter judgment for Plaintiff's damages plus interest and costs, or retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

D.      That Plaintiff may have such other, further and different relief as may be just and

proper.

Dated: New York, NY
        April 4, 2007

                            Respectfully submitted,
                            BLANK ROME, LLP
                            Attorneys for Plaintiff


                    By _____
                            Jack A. Greenbaum (JG 0039)
                            405 Lexington Ave.
                            New York, NY  10174-0208
                            (212) 885-5000

## VERIFICATION

STATE OF NEW YORK          )
                           : ss.:
COUNTY OF NEW YORK         )

Jack A. Greenbaum, being duly sworn, deposes and says:

1.     I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2.     I have read the foregoing Complaint and I believe the contents thereof are true.

3.     The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.     The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

Jack A. Greenbaum

Sworn to before me this
4th day of April 2007

Notary Public

**ELAINE BONOWITZ**
**Notary** Public, State of New **York**
No. 43-4893320
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires May 11, 20___

BLANK ROME, LLP
Attorneys for Plaintiff
CHINA NATIONAL CHARTERING CORP.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHINA NATIONAL CHARTERING CORP.,

              Plaintiff,

          -against-

SOURCE LINK SHIPPING CO. LTD.

             Defendant.

07 Civ.

**AFFIDAVIT UNDER
SUPPLEMENTAL RULE B**

---

STATE OF NEW YORK      )
                        )   ss:
COUNTY OF NEW YORK  )

     JACK A. GREENBAUM, being duly sworn, deposes and says:

     1.    I am a member of the Bar of this Honorable Court and a member of the firm of

Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the

complaint and submit this affidavit in support of Plaintiff's request for the issuance of process of

maritime attachment and garnishment of the property of defendant, ("Defendant"), a foreign

corporation, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime

Claims of the Federal Rules of Civil Procedure.

     2.    Defendant is a party to a maritime contract of charter party and is a foreign

corporation with no offices or place of business within this judicial district.

3.    Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

4.    In our search, we did not find any listing or reference to Defendant in this judicial district or the state of New York.  In the circumstances, I believe Defendant cannot be found within this district.

JACK A. GREENBAUM

Sworn to before me this
4th day April, 2007

Notary Public

ELAINE BONOWITZ
Notary Public, State of New York
No. 43-4893320
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires May 11, 20___

2

311808.1
900200.00001/6533254v.1