UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SANKO STEAMSHIP CO. LTD.,                      :
                                                :
                      Plaintiff,                :      07 Civ. 2401 (VM)
                                                :
      - against -                               :      ECF CASE
                                                :
CHINA NATIONAL CHARTERING                       :
CORP. also known as SINOCHART,                  :
                                                :
                      Defendant.                :
-----------------------------------------------------X

## CHINA NATIONAL CHARTERING CORP.'S
## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT

*Of counsel:*
Patrick F. Lennon, Esq.
Nancy R. Peterson, Esq.
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
pfl@lenmur.com
nrp@lenmur.com

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

FACTS ..........................................................................................................................................1

ARGUMENT

POINT I
SANKO HAS FAILED TO SHOW CAUSE WHY
THE ATTACHMENT OF SINOCHART'S PROPERTY SHOULD NOT BE VACATED............2

POINT II
ENGLISH LAW GOVERNS SANKO'S CLAIM ........................................................................4

POINT III
SANKO HAS ADMITTED THAT IT HAS NOT ASSERTED A RIPE CARGO
INDEMNITY CLAIM AGAINST SINOCHART........................................................................5

POINT IV
SANKO'S PURPORTED CLAIM AGAINST SINOCHART UNDER CHARTER
PARTY CLAUSE 78(C), ALTHOUGH TECHNICALLY "RIPE," DOES NOT GIVE
RISE TO DAMAGE CLAIMS SUFFICIENT TO JUSTIFY THE ATTACHMENT ...................7

POINT V
THE COURT SHOULD EXERCISE ITS DISCRETION AND VACATE SANKO'S
INEQUITABLE ATTACHMENT ................................................................................................9

POINT VI
SANKO HAS OFFERED NO REASON WHY IT SHOULD NOT BE ESTOPPED
FROM MAINTAINING INCONSISTENT POSITIONS IN THIS ACTION AND IN
THE ACTION PENDING IN THE DISTRICT OF ALABAMA................................................11

POINT VII
AS SANKO HAS FAILED TO JUSTIFY THE QUANTUM OF THE ATTACHMENT
IT SHOULD BE REDUCED PURSUANT TO SUPPLEMENTAL RULE E(6) .......................13

   A. The double security should be eliminated..........................................................................13

   B. The attachment in respect of Sinochart's own demurrage claim must be vacated ...........14

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Case Authority**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)..........................3, 10

Bottiglieri di Navigazione SPA v. Tradeline LLC, 472 F. Supp. 2d 588
(S.D.N.Y. Feb.6, 2007)..........................................................................................................10

China National Chartering Corp. v. Source Link Shipping Co. Ltd., 07 Civ. 2736 (DAB)..............11

Dolco Invs. Ltd. v. Moonriver Dev. Ltd. 2007 U.S. Dist. LEXIS 31101
(S.D.N.Y. April 26, 2007)........................................................................................................5

Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 902 (2d Cir. 1965)..........................................9, 10

Guinness PLC v. Ward, 955 F.2d 875 (4th Cir. 1992)..........................................................................12

J.K. Int'l Pty Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074
(S.D.N.Y. February 12, 2007)..............................................................................................5, 10

Mediterranea Di Navigazone Spa v Int'l Petrochemical Group SA, 2007 U.S. Dist.
LEXIS 35869 (S.D.N.Y May 4, 2007)....................................................................................4

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd..............................................................7

Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F. Supp. 2d 386, 396
(S.D.N.Y. 2006)....................................................................................................................14

Sonito Shipping Co. Ltd. v. Sun United Mar., Ltd., 478 Supp. 2d 532 (S.D.N.Y. 2007)..............4, 5

## INTRODUCTION

The Defendant, China National Chartering Corp. (hereinafter "Sinochart" or "Defendant"), by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits this Reply Memorandum of Law in further support of its Motion to Vacate or Reduce the Maritime Attachment issued in this case pursuant to Supplemental Admiralty Rule B.

Despite the surgical and selective opposition employed by Sanko Steamship Co., Ltd. ("Sanko") in opposition to Sinochart's motion, several facts are startlingly apparent. First, Sanko's has asserted a rank indemnity claim. Second, Sanko has admitted to posting double security for the same cargo claim.. And, third, Sanko does not dispute the fact that $890,071.71 of Sanko's "claim" against Sinochart consists of Sinochart's own demurrage claim. In spite of Sanko's carefully tailored yet legally defective theory regarding damages it supposedly incurred due to Sinochart's alleged breach of Clause 78(c) of the charter party between Sanko and Sinochart, it remains clear that Sanko has suffered no actual *damages* and has not otherwise justified the attachment of Sinochart's property in an amount exceeding $3.75 million.

Accordingly, for the reasons set forth herein and in the accompanying Declaration of Timothy Nicholas Young, Sinochart's expert on English as well as in Sinochart's main Memorandum of Law and supporting Declaration of Christopher Howse (dated April 2, 2007), Sinochart respectfully submits that under Supplemental Admiralty Rules (E)(4)(f) and (E)(6) of Sanko has failed to show cause why the attachment should not be vacated or reduced.

## FACTS

The material facts regarding the contract between Sinochart and Sanko for the charter of the motor vessel "SANKO RALLY" (hereinafter the "Vessel") are not in dispute.

1

Sanko contends that is has not sought double security from Sinochart for the same cargo claim. Not so. Sanko's position obfuscates its true actions because regardless of how it couches its claims, the total amount of security it has obtained from Sinochart is roughly the equivalent of the sum total of the double security it has provided for the *same cargo claim* asserted by *both* Devon and Pactrans, *i.e.* $1,650,281.56 (secuirty Sanko's P&I underwriter, Gard, issued to Devon) and $2,275,000.00 (security Gard issued to Pactrans). Sinochart should not be required to provide double security to Sanko merely because Sanko made the improvident decision to secure the same claim twice.

Sanko's remaining claim against Sinochart arises from the demurrage claim that Sinochart itself raised against Pactrans,[1] for which it has obtained a Rule B attachment order in another action in the amount $775,300.88.[2] In this action, Sanko has obtained security from Sinochart for the very same demurrage claim that Sinochart asserted against Pactrans! Thus, by Sanko's unlawful actions, Sanko has been forced to secure its own claim.

For the reasons stated herein, the attachment should be vacated and Sinochart's funds should be released, or in the alternative, the attachment should be reduced.

## ARGUMENT

### POINT I

### SANKO HAS FAILED TO SHOW CAUSE WHY THE ATTACHMENT OF SINOCHART'S PROPERTY SHOULD NOT BE VACATED

Sanko accepts the rule that it bears the burden of showing cause why the attachment of Sinochart's property in this action should not be vacated. *See Sanko Memorandum at 8.* Sanko

---

[1] Sinochart recognizes that Sanko has also claimed for the interest, attorney's fees and costs which it has incurred, or will incur in the various proceedings. Sinochart maintains that as the primary claims are unripe, the corresponding claims for costs, attorney's fees and interest on those claims must fail as well.

[2] Pursuant to the Ex-Parte Order issued against Pactrans on behalf of Sinochart, various garnishee banks in New York have restrained Pactrans' funds in the approximate amount of $479,715.94.

2

contends, however, that it has met the requirements set out by the Second Circuit in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006), in particular the requirement that it prove that it has asserted a *prima facie* valid maritime claim. Its bold assertions notwithstanding, Sanko has failed to discharge its burden under Supplemental admiralty Rule E(4)(f) because no matter how Sanko has attempted to paint its claim, it nevertheless remains a naked, premature indemnity claim that does not constitute a *prima facie* valid maritime claim sufficient to justify utilization of Supplemental Admiralty Rule B.

Moreover, Sanko's assertions regarding the scope of the *Aqua Stoli* holding are incorrect. Sanko contends that the *Aqua Stoli* Court held that an attaching plaintiff need only prove four (4) limited points to sustain an attachment upon challenge by the defendant. However, the *Aqua Stoli* Court made abundantly clear that its holding was not so limited, stating:

> a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. ***We also believe vacatur is appropriate in other limited circumstances.***

*Aqua Stoli*, 460 F.3d at 445 (emphasis added). The Court also approvingly referred to a district court's inherent equitable powers to vacate an inequitable attachment, stating: "Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any *equitable* grounds for vacatur, and we believe that defendants still bear that burden." *Id.* at fn. 5 (emphasis added). The *Aqua Stoli* Court clearly countenanced the vacatur of an inequitable attachment, such as the one involved here. Thus, even if Sanko were able to establish that its premature indemnity claim constituted a *prima facie* valid maritime claim this Court still would be within its discretion to vacate the attachment on equitable grounds.

3

In sum, Sanko's premature and unripe indemnity claim does not constitute a *prima facie* valid maritime claim under Rule B and, even assuming *arguendo* it did, the attachment should nevertheless be vacated as inequitable under the facts and circumstances of this case.

## POINT II

### ENGLISH LAW GOVERNS SANKO'S CLAIM

Sanko's contention that English law does not govern the question of whether it has asserted a *prima facie* valid maritime claim is hardly worthy of discussion. Sanko claims that the Judges in the Southern District are not of a like mind when deciding the issue of what law governs the determination of whether a plaintiff has alleged a prima facie valid maritime claim. However, Sanko's argument and the cases it cites fail to address the controlling issue in this motion, *i.e.* what law should be applied to determine whether a claim is ripe and/or accrued such that it may be considered *prima facie* valid for Rule B purposes? For example, *Mediterranea Di Navigazone Spa v. Int'l Petrochemical Group SA*, 2007 U.S. Dist. LEXIS 35869 (S.D.N.Y. May 4, 2007) contrary to Sanko's assertions, the case does not hold that federal law should be applied to determine whether a claim is ripe, a substantive issue. In fact, Judge Koeltl confirmed that federal law should apply to procedural issues in admiralty cases and the law of the contract shall apply to substantive issues. See *Mediterranea*, 2007 U.S. Dist. LEXIS 35869 at *16.

In attempting to make its argument stand, Sanko continually glosses over the distinction between the procedural and substantive aspects of a Rule B attachment action. In *Sonito Shipping, Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007), a remarkably analogous case, Judge Haight held that while the procedural aspects of Rule B should be controlled by federal law, the "existence vel non of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, in this case the law of contract."

As in *Sonito*, English law is incorporated into the contract between Sanko and Sinochart and as established in the Declaration of Christopher Howse and the Declaration of Timothy Nicholas Young,[3] submitted in support of Sinochart's motion, Sanko's indemnity claim in respect of the damages claimed against it by Devon and Pactrans are clearly not unripe and un-accrued.

The other cases cited by Sanko, e.g. *Dolco Invs. Ltd. v. Moonriver Dev. Ltd.*, (2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. April 26, 2007); *J.K. Int'l Pty Ltd. v. Agriko S.A.S.*, 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. February 12, 2007); stand for the limited proposition that federal law should be applied to the procedural aspects of a maritime attachment. These cases do not contradict the sound principle described by Judge Haight that the substantive aspects of the underlying matter. Thus, Sanko's attempt to distract the Court from analyzing its unripe indemnity claims under English law should be rejected.

## POINT III

### SANKO HAS ADMITTED THAT IT HAS NOT ASSERTED A RIPE CARGO INDEMNITY CLAIM AGAINST SINOCHART

To sustain the attachment of Sinochart's property in this action, Sanko must prove it has asserted an accrued, *prima facie* valid maritime claim under English law. *See Sonito, supra,* at *10*. Sanko does not attempt to dispute this. *See Sanko Memo of Law at 10-13*. In fact, Sanko prefers to couch its claims as arising from Sinochart's alleged breach of Clause 78(c) of the charter party, and not for indemnity arising under Clause 40 of the Charter party in respect of the cargo damages claimed against it by Devon and Pactrans. *See Sanko Memo of Law at 13-16*. More particularly, Sanko affirms "[a]s the Verified Complaint filed by SANKO along with the

---

[3] Mr. Young concedes that Sanko may have a ripe claim for Sinochart's alleged breach of the requirement of Clause 78(c) of the charter party, but nonetheless makes clear that unlike with regard to Sanko's indemnity claims in respect of cargo damage, Sanko has failed to properly allege any damages arising from such breach and, moreover, in any event any properly alleged damages would be completely limited to the cost Sanko incurred in "handling" and "securing" the Devon and Pactrans claims. *See Young Decl. ¶¶ 12-24.*

Affirmations of Michael Volikas and Simon Rainey submitted herein in opposition make clear, the claims asserted by plaintiff are for <u>accrued</u> losses *based on a present breach of Clause 78(c). The security obtained by SANKO stems directly from the current breach of Clause 78(c) by SINOCHART....*" *Id.* at 11 (emphasis added).

Sanko's position in this regard is crucial because accepting Sanko's admission at face value, as the Court must, the entirety of Sanko's claim against Sinochart, and the sole basis for its attachment of Sinochart's property in the sum of $3,750,082.05, is the deeply flawed proposition that Sanko suffered or will suffer damages in that amount due solely to Sinochart's alleged failure to "handle" the Devon and Pactrans claims and to provide security to release Sanko's vessel from the arrests effected by Devon and Pactrans.

As set forth below, and in greater detail in the accompanying Declaration of Timothy Nicholas Young, Sinochart's English law expert, the fatal flaw in Sanko's position, and the paramount reason why the attachment must be vacated, is that Sanko has utterly failed to demonstrate that it has suffered any actual damages arising from Sinochart's alleged breach of Clause 78(c), let alone damages exceeding $3.75 million. Moreover, even if Sanko were claiming indemnity under charter party clause 40 in respect of the cargo claims asserted by Devon and Pactrans, its own English law expert, Mr. Rainey, concedes that "the claim for an indemnity under the Interclub Agreement '*can only arise as a matter of analysis once the liability has been incurred and discharged.*'" See Young Decl. ¶ 11 (quoting Rainey Decl. ¶ 42). Thus, Sanko's arguments regarding the ripeness of any cargo indemnity claim it could have asserted against Sinochart is belied by the opinion of its own English law expert, Mr. Rainey.

In view of the position now maintained by Sanko in its motion papers, as above described, the sole question now before the Court on this motion is whether Sanko has

6

established a *prima facie* valid maritime claim in the sum of $3,750,082.05 based on Sinochart's alleged breach of charter party clause 78(c). Accordingly, the entirety of Sanko's Memorandum of Law at Point IV, pages 13-16, including its arguments made in respect of Judge Hellerstein's decision in *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.*, is irrelevant to the resolution of this motion and should, therefore, be disregarded because Sanko simply cannot allege one cause of action in its Verified Complaint and then seek to justify the attachment of Sinochart's property in the sum of $3,750,082.50 by arguing an entirely different cause of action than the one it plainly claims to have asserted.

## POINT IV

### SANKO'S PURPORTED CLAIM AGAINST SINOCHART UNDER CHARTER PARTY CLAUSE 78(C), ALTHOUGH TECHNICALLY "RIPE," DOES NOT GIVE RISE TO DAMAGE CLAIMS SUFFICIENT TO JUSTIFY THE ATTACHMENT

In analyzing Sanko's contention that its claims against Sinochart for the alleged breach of charter party Clause 78(c) and the obligation to "handle" and provide security for cargo claims, Sinochart's English law expert, Mr. Young, illustrates the defects in the opinions given by Sanko's expert, Mr. Rainey, due to his failure to provide any analysis or opinion regarding the critical question "for what are the Charterers [Sinochart] liable as a result of their breach of charter?" As Mr. Young makes clear, Sanko has suffered no damages arising from Sinochart's alleged breach of Clause 78(c) of the charter party, and any damage Sanko did incur is nowhere near the level of the attachment of Sinochart's property in the sum of $3,750,082.05.

First, as Mr. Young points out, even if under Clause 78(c) Sinochart had the duty to "handle" cargo claims, its obligation to do so would have been in the capacity of an agent for the shipowner, Sanko, due to the fact that the charter party between Sanko and Sinochart required the issuance of "Owner's" (*i.e.* Sanko's) bills of lading issued to third parties for cargo shipped

7

aboard the vessel. *See Young Decl.* ¶¶ *7, 14-15.* As Mr. Young explains, even had Sinochart "handled" the Devon and Pactrans cargo claims in the context of the arrest of Sanko's vessel, it would have done so in the capacity of Sanko's agent and in that capacity "would be entitled as a matter of general law to the right to be indemnified for costs incurred . . . ," including the benefits of all insurance covering Sanko for such claims. *Id.* ¶¶ *15-18.*

Second, Mr. Young illustrates that under English law, Sinochart's alleged failure to "do the cargo claim handling in the first instance does not in fact generate a recoverable head of loss or damage [to Sanko], so far as the *costs* of the claims handling are concerned . . . ." *Id.* ¶ 18. However, it is clear that Sanko has not provided any explanation how a breach by Sinochart of its obligations under Clause 78(c) has led to the damages it claims in the sum of $3,750,082.05. In fact, Mr. Young again illustrates that Sanko and its English law expert, Mr. Rainey, have failed to address this issue at all. *Id.* ¶ 20. Mr. Young opines that:

> [i]f one ignores (as Mr. Rainey QC says one must) the impact of the Interclub Agreement, one is necessarily looking specifically for those heads of loss and damage which the Owners have suffered as a result of the Charterer's breach of their obligations under Clause 78(c) and not for the ultimate payout to the cargo claimants; that ultimate allocation of loss and damage is to be effected under the Interclub Agreement and Mr. Rainey QC accepts that there is no current "ripe" cause of action under that Agreement. Thus one is concerned only with an "in the first instances" allocation of cashflow as being recoverable loss and damage resulting from a breach of Clause 78(c). I will call this the "financing cost." The cause of action is "ripe" only for that financing cost as material loss and damage. By definition, the amounts secured by the LOUs are not actually lost to the Owners since they are not paid to the cargo claimants but merely unavailable for use by the Owners, even if one assumes that the Owners have actually provided a designated sum as counter-security for the Club LOU's . . . . The only recoverable loss and damage to the Owners resulting from the breach of clause 78(c) at this "first instance" stage is thus the financing cost of maintaining the security, if any and often this is only a nominal 1% per annum . . . .

*Id.* ¶ 21. Mr. Young concludes the foregoing analysis by stating, "it is quite clear to me that the amounts secured by the LOUs are not recoverable as damages for breach of clause 78(c), but

8

only the financing cost of maintaining that security, if any. I have seen no evidence showing what those costs are." *Id.* ¶ 22. A thorough review of all of Sanko's pleadings in this matter, *i.e.* the Verified Complaint, affidavits, declarations, Memorandum of Law, etc., fails to reveal a single sentence containing any analysis whatsoever linking the damages claimed by Sanko in the sum of $3,750,082.05 to its claim against Sinochart for the alleged breach of Clause 78(c). As set forth above, Sanko has admitted that it has sought security only for the alleged breach of Clause 78(c) and not for indemnity under Clause 40 (and the Interclub Agreement) for the cargo claims asserted against Sanko by Devon and Pactrans. Because Sanko's damages arising from breach of Clause 78(c) would be limited exclusively to the costs *to Sanko*[4] of financing the issuance of LOUs, by its underwriter, Gard, as Mr. Young's irrefutable analysis makes clear Sanko's damage claim in the sum of $3,750,082.05 is unrelated to the only arguably ripe *prima facie* maritime claim Sanko has asserted, *i.e.* breach of Clause 78(c). Accordingly, the attachment must be vacated because the sole cause of action alleged in Sanko's Verified Complaint, whether ripe or not, fails to justify the damages Sanko claims and upon which it has based the wrongful attachment of Sinochart's property in the sum of $3,750,082.05.

POINT V

THE COURT SHOULD EXERCISE ITS DISCRETION
AND VACATE SANKO'S INEQUITABLE ATTACHMENT

Sanko, in a final act of desperation, urges the Court to exercise its discretion and to uphold its attachment under the Second Circuit's decision in *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 902 (2d Cir. 1965). While Sinochart takes no issue with the *Greenwich Marine* decision generally, or the notion that the Court has a measure of discretion in these

---

[4] The financing costs of the LOUs, as admitted by Sanko in its motion papers, clearly would have been incurred by Sanko's P&I insurer, Gard, and not by Sanko itself.

circumstances, Sanko has failed to establish any equitable grounds upon which the Court should exercise such discretion to uphold Sanko's attachment which, as set forth above, is premised upon a woefully flawed and questionable claim.

In addition, Sanko's entire discussion of *Greenwich Marine* and *Aqua Stoli* (see Sanko Memorandum of Law at 18-22) wholly misses the mark. As set forth at Point I, *supra*, the *Aqua Stoli* Court expressly countenanced the vacatur of inequitable attachments such as Sanko's in this case. "Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any *equitable* grounds for vacatur, and we believe that defendants still bear that burden." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 fn. 5.

Even the one case Sanko chose to discuss in its Memorandum of Law, *J.K. Int'l. Pty, Ltd.*, 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. 2007), supports the vacatur of the attachment in this case. In *J.K. Int'l*, Judge Karas clearly recognized that absent some compelling equities, a premature attachment claim should be dismissed. *Id.* at *14. In addition, in *Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. Feb. 6, 2007), relying on *Greenwich Marine*, Judge Kaplan held that until the underlying action is resolved, an indemnity action based thereon is premature and thus, Rule B is not an available remedy, noting that such discretion is extremely limited to circumstances where it is abundantly clear that the plaintiff's otherwise inchoate indemnity claim will imminently ripen (as in *Greenwich Marine* where the claim ripened within *hours* of the attachment).

Here, all Sanko offers are the obfuscating declarations of its English solicitor and barrister, and argumentative rhetoric. The facts clearly establish that for reasons of its own choosing, Sanko made the improvident decision to provide double security for a single cargo

claim asserted by two parties and now seeks to foist that improvident decision on Sinochart. Sanko compounded this inequity by attaching Sinochart's property to secure Sinochart's own demurrage claim against Pactrans. Maintaining the attachment of Sinochart's property in the sum of $3,750,082.05 is even more glaringly inequitable when consideration is taken of: (a) the fact that Sanko has failed to assert any truly ripe or matured *prima facie* valid maritime claim; and (b) even assuming its Clause 78(c) claim is *prima facie* valid and ripe, Sanko has failed to demonstrate it has suffered *any* damages arising from Sinochart's breach of Clause 78(c), let alone in an amount approaching $3,750,082.05.

## POINT VI

### SANKO HAS OFFERED NO REASON WHY IT SHOULD NOT BE ESTOPPED FROM MAINTAINING INCONSISTENT POSITIONS IN THIS ACTION AND IN THE ACTION PENDING IN THE DISTRICT OF ALABAMA

As with Sinochart's motion to reduce the attachment due to the circuity of Sanko's claim in respect of Sinochart's own demurrage claim asserted against Pactrans, Sanko utterly fails to offer any legitimate reason why it should not be estopped from maintaining inconsistent positions in this litigation and the related litigation pending in the District of Alabama. Instead, Sanko takes obfuscation to an extreme by alleging that Sinochart maintained in a totally unrelated proceeding the same position Sanko has asserted herein with regard to maritime attachments to secure unripe indemnity claims. Sanko's diversion is unavailing. First, Sinochart never asserted any such argument in the action pending in this District entitled *China National Chartering Corp. v. Source Link Shipping Co. Ltd.*, 07 Civ. 2736 (DAB), and Sanko has offered no evidence to support the contention. The docket entries in that case belie Sanko's argument.

More importantly, Sanko confuses the doctrine of offensive collateral estoppel, with the doctrine of equitable estoppel, the latter being relevant to Sanko's inconsistent positions in this

and the Alabama action. The court in *Guinness PLC v. Ward*, 955 F.2d 875 (4th Cir. 1992) described the differences between the doctrines as follows:

> That an estoppel can arise because of a prior inconsistent claim or position taken in a judicial proceeding is clear. A party cannot have its cake and eat it too. Although there are several species of estoppel, the court is here dealing with what is generally known as judicial estoppel or the doctrine of preclusion against inconsistent positions. This type of estoppel protects interests different from those protected by equitable estoppel, the type referred to in 31 C. J.S. Estoppel § 117a (1964), . . . . Equitable estoppel is designed to protect any adversary who may be prejudiced by the attempted change of position. On the other hand, judicial estoppel, or preclusion against inconsistent positions, is designed to protect the integrity of the courts and the judicial process.
>
> An exposition of the modern doctrine of judicial estoppel based upon preclusion against inconsistent positions is found in 1B Moore, Federal Practice, § 0.405[8], at 765-768 (2d ed. 1971) as follows: "Even where the facts will not permit the application of res judicata, collateral estoppel, or the election rule against inconsistent remedies, a party may be precluded by a prior position taken in litigation from later adopting an inconsistent position in the course of a judicial proceeding. Though the preclusion doctrine is sometimes referred to as "judicial estoppel" or "estoppel by oath," and though it is frequently expressed in language sounding of estoppel in pais, numerous cases illustrate the existence of a doctrine forbidding inconsistent positions, usually as to facts, which operates independently of equitable estoppel.
>
> Many cases forbidding inconsistent positions in judicial proceedings may be grouped conveniently into two classes: those where a party seeks to contradict his own sworn statements made in prior litigation in which he was a party or a witness; and those where the prior inconsistent position was not taken under oath. . . . Both types of preclusion seem to fall, generically, within a universal judicial reluctance to permit litigants to 'play fast and loose' with courts of justice according to the vicissitudes of self-interest.
> * * *
> The preclusion rule has been held to operate regardless of whether the prior inconsistent position was successfully maintained; and irrespective of reliance by, or prejudice to, the party invoking it. . . . (other citations omitted).

*Guinness PLC*, 955 F.2d at 899.

In line with the foregoing authorities, Sanko should not be permitted to "play fast and loose" in this proceeding and the related proceeding in the District of Alabama. Quite clearly, and despite the explanation in its motion papers, Sanko has argued in Alabama that Pactrans'

12

claims are unripe, premature indemnity claims, yet here it argues the exact opposite in an attempt to maintain a $3,750,082.05 attachment of Sinochart's property premised on the exact same indemnity claims it objected to in Alabama. Equity should not tolerate Sanko's conduct. Accordingly, Sanko should be estopped from denying that its indemnity claim[5] against Sinochart is premature, and as Sanko has proffered no other equitable basis or unique circumstances to justify the attachment as security for such a claim, the attachment should be vacated.

## POINT VII

### AS SANKO HAS FAILED TO JUSTIFY THE QUANTUM OF THE ATTACHMENT; IT SHOULD BE REDUCED PURSUANT TO SUPPLEMENTAL RULE E(6)

Should the Court decide that the attachment of Sinochart's property in the sum of $3,750,082.05 should not be vacated in its entirety, which Sinochart respectfully submits is the only just outcome, the attachment should be reduced pursuant to Rule E(6) as Sanko has failed to justify the quantum of damages it claims. Even the Declaration of its English solicitor, Michael Volikas, is devoid of any detail or other *evidence* justifying the quantum of damages it has claimed against Sinochart. Particularly, all Sanko has provided is Mr. Volikas' 'say-so,' without, for example, any invoices even to justify the alleged expenses it claims to have already incurred in the related proceedings pending in Florida and Alabama.[6]

### A.   The double security should be eliminated

Sanko's explanation in its opposition papers with respect to the fact that it is seeking double security from Sinochart for the same cargo claim asserted against Sanko by two parties

---

[5]   As noted in Point IV, *supra*, Sanko argues that its claim against Sinochart is premised on an alleged breach of Clause 78(c) of the charter party, But, as Mr. Young, Sinochart's English law expert points out, Sanko has not suffered any damages, let alone damages of $3,750,082.05 for that claim. Accordingly, Sanko's attachment of $3,750,082.05 of Sinochart's property must be viewed through the prism of an unripe, premature and incohate indemnity claim in respect of cargo damages, despite that Sanko has specifically disavowed having asserted such a cause of action in the Verified Complaint.

[6]   *See Volikas Decl.* ¶¶ 18-19.

(*i.e.* Pactrans and Devon) is simply obfuscating double-talk because the wrongful attachment of Sinochart's property is roughly the equivalent to the sum total of the double security Sanko has provided to Devon and Pactrans, *i.e.* $1,650,281.56 (Letter of Undertaking Sanko's P&I underwriter, Gard, issued to Devon) and $2,275,000.00 (Letter of Undertaking Sanko's P&I underwriter, Gard, issued to Pactrans). Sinochart should not be required to provide double security to Sanko merely because Sanko made the improvident decision to secure the same claim twice. Thus, the attachment of Sinochart's property must be reduced as under no circumstance will Sanko be required to pay *both* Devon and Pactrans for the same cargo claim.

As set forth in Sinochart's main Memorandum of Law, the Court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006). For the foregoing reasons, and those set forth in Sinochart's Main Memorandum of Law, the attachment should be reduced to reflect the actual amount of the alleged cargo damages one time, *i.e.* $1,500,000.00.[7] Furthermore, the security awarded for the interest and costs related to this claim should be reduced as well to reflect a more reasonable estimate. Sanko's security for interest should be limited to reflect a more sum, *e.g.* three years at 6% per annum, compounded quarterly. Applied to the reduced claim ($1,500,000), this equals $293,427.26. Furthermore, Sanko's security for costs should be limited to 30% of its claim, at most, which would be in accord with generally accepted percentages for the estimation of recoverable costs, which as applied to the adjusted claim equals $450,000.00. Therefore, in total, the attachment should be reduced to $2,243,427.20.

### B.  The attachment in respect of Sinochart's own demurrage claim must be vacated

---

[7]  See Pactrans' Complaint at 10, annexed as Exhibit "A" to Sinochart's main Memorandum of Law.

14

Sanko has also failed to address in any way Sinochart's motion to reduce the quantum of the attachment because it is based, in part, on Sinochart's own demurrage claim against Pactrans. In other words, Sanko has attached Sinochart's property in the sum of $890,071.71 to secure it against claims made by Pactrans against Sanko in respect of Sinochart's own demurrage claim, *i.e.* the demurrage claim has now come full circle. As Sanko has failed to raise any opposition to this aspect of Sinochart's motion pursuant to Supplemental Admiralty Rule E(6), there is no reason why the Court should not, at the very least, reduce the quantum of the attachment by $890,071.71.

## CONCLUSION

WHEREFORE, the Court should grant Sinochart's motion to vacate the attachment, or in the alternative, reduce the attachment to an appropriate level.

Dated: New York, NY
July 6, 2007

> The Defendant,
> CHINA NATIONAL CHARTERING CORP.
>
> By: *[signature]*
> Patrick F. Lennon (PL 2162)
> Nancy R. Peterson (NP 2871)
> LENNON, MURPHY & LENNON, LLC
> 420 Lexington Ave., Suite 300
> New York, NY 10170
> (212) 490-6050 – phone
> (212) 490-6070 – fax
> pfl@lenmur.com
> nrp@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on July 6, 2007, a copy of the foregoing Reply Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Patrick F. Lennon